**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Universal Services of America LP, et al., | No. CV-23-00463-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Daniel Mazzon, | |
| Defendant. | |

Pending before the Court is a motion for a temporary restraining order ("TRO") and preliminary injunction ("PI"), filed by Plaintiffs: Universal Services of America, LP ("Universal"); Universal Protection Service, LP ("UPS"); and Universal Building Maintenance, LLC, doing business as Allied Universal Janitorial Services ("AUJS"). (Doc. 2). The motion is fully briefed. (*See* Docs. 21; 29). The Court now rules.

**I.   BACKGROUND**

Plaintiffs are three affiliated companies seeking to enforce a non-solicitation agreement against a former employee. Plaintiff Universal is a parent company of both Plaintiff UPS and Plaintiff AUJS. UPS and AUJS respectively provide security and janitorial services to a variety of facilities throughout the United States. (*See* Doc. 2-1 at 3, 16). UPS is a limited partnership with five limited partners, including Universal, and one general partner.[1] AUJS is a limited liability company whose only members are Universal

---

[1] (Docs. 20 at 2; 14 at 1–2). The complaint states that UPS is a wholly owned subsidiary of Universal. (Doc. 1-2 at 15). An affidavit supporting Plaintiffs' motion for a PI and TRO states that Universal is the sole limited partner of UPS. (Doc. 2-1 at 15). These statements are inconsistent both with Plaintiffs' corporate disclosure statement (Doc. 14) and with

and an individual named M. Olivas. (Docs. 20 at 2–3; 15 at 1–2).[2] From late spring of 2016 until January of 2023, AUJS employed Defendant as a business development manager. (Doc. 2-1 at 15; *see also* Doc. 21 at 10, 19). In that capacity he was responsible for growing AUJS's business in Arizona. (Docs. 2 at 4; 21 at 2). Carrying out this responsibility involved regular contact with AUJS's customers for the purpose of establishing, growing, and maintaining business relationships with these customers. (*See* Doc. 2-1 at 3).

Upon being hired, Defendant allegedly signed a non-solicitation agreement with UPS as a condition of his employment with AUJS. (Doc. 1-2 at 18–19). Defendant disputes that he signed the agreement. (Doc. 21 at 10). The agreement purports to restrict Defendant's ability to solicit certain customers following his termination from employment with UPS. (*See* Doc. 2-1 at 7). It reads as follows:

> Universal
> Protection
> Service
> No Solicitation of Customers or Employees Policy
>
> The employee agrees that all customers of Universal Protection Service (the "Company") to which the employee has or will provide services during the employee's employment with Universal Protection Service, and all prospective customers, shall be solely customers of the Company.
>
> The employee agrees that, for a period of one year immediately following the termination of employment with the Company, he/she shall neither directly nor indirectly solicit business for products or services that compete with those of Universal Protection Service, from any of the Company's customers with whom the employee had contact during his or her employment.

---

Defendant's supplemental notice (Doc 20), which indicate that five other entities have direct ownership interests in UPS.

[2] Plaintiffs' complaint states at one point that AUJS is a wholly owned subsidiary of Universal. (Doc. 1-2 at 15). At another point the complaint states that AUJS is a wholly owned subsidiary of UPS. (*Id.* at 19). Defendant's supplemental notice (Doc. 20) and Plaintiffs' corporate disclosure statement contradict both of these statements, as they indicate that UPS has no ownership interest in AUJS and that Universal is not the sole owner of AUJS. (*See* Doc. 15 at 1–2). Because Plaintiffs have neither sought to correct Defendant's supplemental notice nor submitted supplemental disclosure statements, the Court will presume in ruling on Plaintiffs' motion that its corporate disclosure statements are accurate. To the extent Plaintiffs have submitted inaccurate corporate disclosure statements which undermine their arguments when accurate disclosure statements would have supported their arguments, Plaintiffs have failed to carry their burden of clearly showing entitlement to preliminary relief.

> The employee further agrees that for a period of one year after termination of employment, the employee will not directly or indirectly induce or solicit any of the Company's employees to leave their employment.

(*Id.*). In the weeks and months immediately following Defendant's termination from AUJS, Defendant allegedly solicited customers of AUJS to become clients of his business, Mazzon Industries. (Doc. 2 at 7–8). Plaintiffs then brought this action for breach of contract, tortious interference with contract, and breach of the duty of loyalty. (Doc. 1-2 at 22–25). Plaintiffs seek a TRO and PI to prevent Defendant from continuing to allegedly breach the agreement. (*See* Doc. 2 at 9).

## II.   LEGAL STANDARD

Preliminary relief is "an extraordinary remedy never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Compare Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008) (considering a PI), *with Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) ("[A]nalysis is substantially identical for the [preliminary] injunction and the TRO . . . ."). To show entitlement to preliminary relief a plaintiff must demonstrate "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. But "'serious questions going to the merits' . . . can support issuance of a preliminary injunction" where the "balance of hardships . . . tips sharply toward the plaintiff" and the other two elements are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A plaintiff bears a burden of persuasion in making this showing. *Norbert v. City and County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021).

## III.   ANALYSIS

Plaintiffs seek a TRO and PI enjoining Defendant from "violating the Agreement," and specifically enjoining Defendant from: (1) attempting to solicit customers or prospective customers with whom Defendant had contact while employed by AUJS; (2) using or disclosing any of Plaintiffs' confidential information; and (3) accepting business

from Plaintiffs' customers or prospective customers with whom Defendant had contact while working for AUJS. (*See* Doc. 2 at 3, 15).

As a preliminary matter, the agreement does not obviously address the use of confidential information. Nor does it obviously prevent Defendant from accepting business from AUJS customers so long as he did not solicit those customers for that business. Plaintiffs have not explained how using confidential information or accepting (but not soliciting) business violates the agreement, and have not suggested an alternative basis for their request. (*See* Docs. 2, 29). They have therefore not shown entitlement to this relief.

The Court will consider whether Plaintiffs have clearly shown entitlement to a TRO and PI preventing Plaintiff from soliciting certain AUJS customers under the *Winter* test and the "serious questions" test.

**a.  *Winter* Test**

The Court begins with the obvious: even if Defendant did indeed sign the non-solicitation agreement, it does not appear to afford AUJS any rights against Defendant. Rather, the agreement apparently prevents Defendant from soliciting business for products or services that compete with those of UPS from any UPS customers with whom Defendant has contact during employment with UPS, for a one-year period beginning on the date his employment is terminated at UPS. (*See* Doc. 2-1 at 7). It is undisputed that Defendant worked for AUJS and not UPS. (*See id.* at 3–5). Thus, Defendant has not been terminated from UPS, and the one-year term has not yet begun—and indeed seems likely never to begin. Further, because Defendant was never employed by UPS, he never provided services to or contacted any UPS customers during employment with UPS. It is therefore not clear that even if the one-year term were somehow considered to have begun that the agreement would prevent Defendant from soliciting anyone at all.

Plaintiffs, however, suggest that AUJS may enforce the agreement as a third-party beneficiary, argue that the agreement should inure to AUJS's benefit, and argue that the agreement is assignable to AUJS. The Court considers each argument in turn.

### i. Third-Party Beneficiary

Although Plaintiffs do not explicitly use the term "third-party beneficiary," the Court construes Plaintiffs' repeated statements that AUJS may enforce the agreement because it was made "for the benefit of AUJS" as an argument that AUJS is a third-party beneficiary of the agreement. (*See* Docs. 2 at 2, 6, 10; 29 at 3). Among other requirements, "for a person to recover as a third-party beneficiary of a contract, an intention to benefit that person must be indicated in the contract itself." *Norton v. First Fed. Sav.*, 624 P.2d 854, 856 (Ariz. 1981) (citation omitted). Plaintiffs have pointed to nothing in the text of the agreement which demonstrates an intention to benefit AUJS, and the Court can discern from the text no such intention. The agreement refers exclusively to UPS and contains no reference to AUJS. Plaintiffs have therefore failed to raise a serious question going to the merits of whether AUJS is a third-party beneficiary of the agreement.

### ii. Inurement to AUJS's Benefit

Plaintiffs, in their complaint and in their briefing on this motion, make several statements to the effect that the benefits of the agreement should "inure to the benefit" of AUJS because AUJS is a subsidiary of UPS. (Docs. 1-2 at 19; 2 at 2, 6). To the extent this argument is distinct from their third-party-beneficiary and assignment arguments, they cite no cases in support of it, and fail to explain how and why the agreement inures to AUJS's benefit. In any case, UPS is not a member of AUJS, so it does not appear that AUJS is a subsidiary of UPS. This inadequately explained and apparently factually inaccurate argument does not support Plaintiffs' attempt to show entitlement to preliminary relief.

### iii. Assignment

With regard to assignment, Plaintiffs specifically argue that the agreement "is assignable" and "should be deemed assigned," from UPS to AUJS. (*See* Docs. 2 at 10–11; 29 at 2–3). In other words, Plaintiffs do not allege that the agreement was expressly assigned. Therefore, the agreement can only be considered potentially enforceable by AUJS against Defendant if it was the subject of an equitable assignment. *See Supplies for Indus., Inc. v. Christensen*, 659 P.2d 660, 662 (Ariz. App. 1983). The three basic

requirements of an equitable assignment are "intent to assign, intent to receive, and valuable consideration." *Id.*; *Allen v. Hamman Lumber Co.*, 34 P.2d 397, 398–99 (Ariz. 1934).

While UPS's intent to assign and AUJS's intent to receive may perhaps be inferred from the allegation that Defendant entered into the agreement with UPS as a condition of his employment with AUJS, Plaintiffs do not argue or suggest that UPS received any valuable consideration from AUJS to support this assignment. (*See* Docs. 2; 2-1; 29). Nor can the Court discern any specific allegation of consideration in the complaint. (*See* Doc. 1-2 at 13–27).[3] Indeed, the most likely scenario seems to be that AUJS used a UPS agreement form by mistake. If this is true (and the parties do not provide an alternative explanation[4]) there would be no reason for AUJS to provide consideration in exchange for an assignment because it would not have been aware that an assignment was even necessary for the agreement to be enforceable. Thus, regardless of whether the agreement is assignable, Plaintiffs have not adequately demonstrated that it was assigned. Plaintiffs have therefore failed to show that they are likely to succeed on the merits.[5]

This aside, Plaintiffs also have not carried their burden of persuasion to clearly show that the non-solicitation agreement is assignable. In Arizona contractual rights generally are assignable unless:

> (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or
>
> (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

---

[3] A lack of consideration will not typically be an issue where a successor company seeks to enforce an agreement between its predecessor and an employee because the predecessor's right to enforce the restrictive covenant would be one asset among many the successor acquired when it purchased the predecessor. *See, e.g.*, *Sogeti USA LLC v. Scariano*, 606 F. Supp. 2d 1080, 1081 (D. Ariz. 2009). Of course, here AUJS has not been acquired by UPS.
[4] (*See* Docs. 2 at 2–6; 2-1 at 14–16; 1-2 at 13–27).
[5] Even had Plaintiffs alleged a legal rather than equitable assignment, supporting consideration would still be required. *Certified Collectors, Inc. v. Lesnick*, 570 P.2d 769, 771 (Ariz. 1977) (citation omitted) (noting that "an assignment is subject to the same requisites for validity as are other contracts," including "consideration").

(c) assignment is validly precluded by contract.

*Highland Vill. Partners, L.L.C. v. Bradbury & Stamm Constr. Co.,* 195 P.3d 184, 187 (Ariz. 2008) (quoting Restatement (Second) of Contracts § 317(2) (Am. L. Inst. 1981)). Plaintiffs argue that the second and third exception do not apply here, and Defendant appears to concede this point. (*Compare* Doc. 2 at 10–11, *with* Doc. 21 at 4–6).

Plaintiffs also argue that assigning the agreement to AUJS would not represent a material change to Defendant's duty or materially increase the burden or risk imposed on him by his contract. Plaintiffs cite no relevant case in support of their argument on this point. (*See* Docs. 2 at 10–11; 29 at 2–3). But Plaintiffs reason that assigning the agreement from UPS to AUJS does not materially change Defendant's duty or burden under the contract because "it restricts Defendant from soliciting any of the customers or prospective customers with whom he had contact" and so "assigning the benefit . . . to [AUJS] on whose behalf he made contact with customers, does not materially alter its terms." (Doc. 2 at 11).

But the thrust of Plaintiffs' motion is that assigning UPS's rights under the agreement to AUJS would permit AUJS to enforce the agreement against Defendant to prevent him from soliciting AUJS customers.[6] As discussed, Defendant did not agree to refrain from soliciting customers in general. Rather, he allegedly agreed to refrain from soliciting customers *of UPS* with whom he had contact while employed *by UPS* for a term of one year after being terminated from employment *with UPS*. (*See* Doc. 2-1 at 7). It is therefore hard to see how the assignment Plaintiffs envision would not materially alter Defendant's duties or increase his risk or burden. Indeed, that seems to be the entire point of Plaintiffs' assignment argument. It stands to reason that, during his employment, Defendant would have been much more likely to encounter customers of the company actually employing him specifically to contact its customers (AUJS) than he would have

---

[6] The Court will assume this interpretation of the effect of an assignment is true for the purpose of analyzing Plaintiffs' assignment argument but will interrogate this assumption in the following section.

- 7 -

been to encounter customers of a company not employing him for any reason (UPS), such that after being terminated he would have had to refrain from soliciting a significantly higher number of customers had the entire agreement been assigned to AUJS. Additionally, "assigning" the agreement to AUJS would, at least on Plaintiffs' theory, make it actionable where presently it has no apparent effect, as Defendant has been terminated from AUJS but not from UPS. Both of these changes seem likely to qualify as material changes to Defendant's duties, risk, or burden, and Plaintiffs have not persuasively explained why they do not qualify as such. Plaintiffs have therefore failed to show that they are likely to prevail on the merits.

### b. "Serious Questions" Test

As indicated in the foregoing discussion, Plaintiffs have not, by their third-party-beneficiary and "inurement" arguments, raised a serious question going to the merits of their claim. The Court also finds that Plaintiffs have not raised a serious question going the merits by their assignment argument. It is not clear to the Court that the agreement would have any present effect even if UPS could and did assign its rights under the agreement to AUJS. The assignment of UPS's rights under the contract to AUJS would seem to be nothing more than the assignment of a conditional right, the condition for which has not occurred. *See generally* Restatement (Second) of Contracts § 320. As discussed, unless and until Defendant is employed by UPS, comes into contact with UPS customers while so employed, and is then terminated, the agreement would appear to have no effect.

It seems that Plaintiffs really seek not to have the agreement "deemed assigned," but to have the Court reform the agreement to reflect the parties' alleged intent that the agreement's terms apply to AUJS rather than to UPS. *Compare Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) (citing *A & A Sign Co. v. Maughan*, 419 F.2d 1152, 1156 (9th Cir. 1969)) ("Reformation is the remedy designed to correct a written instrument which fails to express the terms agreed upon by the parties . . . ."), (*with* Doc. 29 at 3) ("The conditions under which Defendant signed the Agreement indicate that both parties intended the Agreement to be for the benefit of AUJS.").

The Court concludes that Plaintiffs have not clearly shown that they are seeking relief under an appropriate legal theory, and thus have not raised serious questions going to the merits of their breach of contract claim. Plaintiffs' motion for a TRO and PI will be denied.[7]

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for a TRO and PI (Doc. 2) is **DENIED**.

Dated this 1st day of May, 2023.

James A. Teilborg
Senior United States District Judge

---

[7] Plaintiffs, in their motion, request a TRO until an evidentiary hearing can be held and a PI issued. (Doc. 2 at 3, 15). But the only factual issue which the parties suggest requires an evidentiary hearing is the question of whether Defendant signed the agreement. (*See* Docs. 21 at 10; 29 at 5). Because the Court does not reach this question in resolving Plaintiffs' motion, no evidentiary hearing is needed. *See Int'l Molders' & Allied Workers Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) (holding evidentiary hearing unnecessary where "some facts [were] in dispute, but the real problem involve[d] the application of correct substantive law to those facts"); *Keneally v. Lungren*, 967 F.2d 329, 334–35 (9th Cir. 1992) ("We do not indulge a presumption in favor of evidentiary hearings."); 13 James Wm. Moore et al., Moore's Federal Practice § 65.21[4] (Matthew Bender 3d ed. 1997) ("[A] hearing is not required if no disputed factual issues need to be resolved when deciding whether or not to issue a preliminary injunction.").