**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Universal Services of America LP, et al., | No. CV-23-00463-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Daniel Mazzon, | |
| Defendant. | |

Pending before the Court is Defendant Daniel Mazzon's motion to dismiss the complaint for failure to state a claim. (Doc. 23). Plaintiffs responded, (Doc. 28), and Defendant replied, (Doc. 30). The court now rules.

**I.   BACKGROUND**

The following account treats the well-pleaded factual allegations of the complaint as true. Plaintiffs are three affiliated companies seeking to enforce a non-solicitation agreement against a former employee. Plaintiff Universal Services of America, LP ("Universal") is the parent company of Plaintiff Universal Protection Service, LP ("UPS") and possibly also of Plaintiff Universal Building Maintenance, LLC ("AUJS"). UPS and AUJS respectively provide security and janitorial services to a variety of facilities throughout the United States. (*See* Doc. 1-2 at 16, 21). UPS is a wholly-owned subsidiary of Universal.[1] The ownership of AUJS is not alleged clearly, as the complaint at one point

---

[1] (Doc. 1-2 at 15). As noted in the Court's order denying preliminary relief, other filings by Plaintiffs and Defendant contradict this allegation. (Doc. 31 at 1 n.1 (citing Doc. 14; Doc. 20)).

alleges that AUJS is a wholly owned subsidiary of Universal, and at another point that AUJS is a wholly owned subsidiary of UPS.[2] From late spring of 2016 until January of 2023, AUJS employed Defendant as a business development manager. (Doc. 1-2 at 16, 18). In that capacity he was responsible for growing AUJS's business in Arizona. (*Id.* at 16). Carrying out this responsibility involved regular contact with AUJS's customers for the purpose of establishing, growing, and maintaining business relationships with these customers. (*Id.* at 16–17).

Upon being hired, Defendant signed a non-solicitation agreement with UPS as a condition of his employment with AUJS.[3] The agreement purports to restrict Defendant's ability to solicit certain customers following his termination from employment with UPS. (*See id.* at 19). It reads as follows:

> The employee agrees that all customers of Universal Protection Service (the "Company") to which the employee has or will provide services during the employee's employment with Universal Protection Service, and all prospective customers, shall be solely the customers of the Company.
>
> The employee agrees that, for a period of one year immediately following the termination of employment with the Company, he/she shall neither directly nor indirectly solicit business for products or services that compete with those of Universal Protection Service, from any of the Company's customers with whom the employee had contact during his or her employment.

(*Id.*; *see also* Doc. 2-1 at 7; Doc. 23 at 13).

While employed by AUJS, Defendant formed Mazzon Industries to compete with AUJS and UPS, and also used his AUJS-assigned laptop to prepare pitches to prospective Mazzon Industries clients. (Doc. 1-2 at 19–20, 25). In the weeks and months immediately following Defendant's termination from AUJS, Defendant and Mazzon Industries solicited several AUJS clients to induce them to stop doing business with AUJS and begin doing business with Ace Building Maintenance, a Mazzon Industries client and AUJS competitor. (*See id.* at 18–23). Plaintiffs then brought this action for breach of contract, tortious

---

[2] (*See* Doc. 1-2 at 15, 19). As noted in the Court's order denying preliminary relief, other of Plaintiffs' corporate disclosure statement contradicts both of these allegations. (Doc. 31 at 3 & n.2 (citing Doc. 15 at 1–2)).
[3] (*Id.* at 18–19). In opposing Plaintiffs' motion for preliminary relief Defendant claimed not to have signed the agreement. (Doc. 21 at 10).

interference with contract, and breach of the duty of loyalty. (*Id.* at 22–25). Plaintiffs filed a motion for preliminary relief, seeking a temporary restraining order and preliminary injunction to prevent Defendant from continuing claimed breaches of his non-solicitation agreement. (Doc. 2). The Court denied Plaintiffs' motion for preliminary relief, finding that Plaintiffs had not met their burden of showing serious questions going to the merits of their breach of contract claim. (Doc. 31 at 8–9). While the motion for preliminary relief was still pending, Plaintiff filed the pending motion to dismiss.

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must grant such a motion when a claim either lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must comply with the requirement of Rule 8(a)(2) that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While this statement need not contain "detailed factual allegations," the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This plausibility standard demands something more of a complaint than a "sheer possibility" of a defendant's liability: the complaint must contain factual content permitting the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a complaint for failure to state a claim, the Court "must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true," *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), but "[c]onclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss," *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

When "interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest

state court would decide the issue . . . . However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts."[4]

## III. ANALYSIS

Defendant argues that each claim must be dismissed because Plaintiffs have not alleged facts sufficient to support them. Plaintiffs argue that each claim is adequately supported. The Court considers the sufficiency of each claim in turn.

### a. Breach of Contract

Defendant argues that Plaintiffs' breach of contract claim must be dismissed because the facts alleged in the complaint do not plausibly show that Defendant breached a contract with Plaintiffs. (Doc. 23 at 4–5). Plaintiffs argue that the non-solicitation agreement is ambiguous, and that its interpretation therefore presents a question of fact inappropriate for resolution on a motion to dismiss. (Doc. 28 at 2). Plaintiffs also argue that the contract "may be assigned" to AUJS. (*Id.* at 3).

A party bringing a claim for breach of contract must show "the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Plaintiffs have adequately alleged the existence of the contract and resulting damages from what they characterize as breach of that contract. (*See* Doc. 1-2 at 18–23). Specifically, Plaintiffs have alleged that Defendant executed the non-solicitation agreement in exchange for employment at AUJS, solicited AUJS customers following his resignation, and induced those customers to cease doing business with AUJS. (*Id.*).

---

[4] *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). Regarding choice-of-law rules, "the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Arizona courts follow the approach of the Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971) to determine which state's law applies to actions in both tort and contract. *See Bates v. Super. Ct.*, 749 P.2d 1367, 1369–70 (Ariz. 1988) (citing Restatement §§ 6, 145); *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992) (citing Restatement § 187); *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 442 ¶¶ 9–10 & n.3 (Ariz. 2003) (citing Restatement §§ 187, 188). Both for contracts lacking a choice of law provision and for torts, the law of the state with the most significant relationship to the subject matter and the parties applies. Restatement §§ 145, 188. Here, it is undisputed that Arizona substantive law applies to the tort and contract claims. (*See* Docs. 2; 21; 23; 28; 29; 30) (relying on and arguing Arizona law).

But whether the alleged facts plausibly show that Defendant breached a contract with Plaintiffs depends in large part upon what the terms of the contract mean. "Interpretation is the process by which" Arizona courts "determine the meaning of words in a contract." *Taylor v. State Farm Mut. Auto Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993). The goal of contract interpretation is to find and give effect to the intentions of the parties. *Id.* In determining the parties' intent, Arizona courts consider extrinsic evidence according to the parol evidence rule. *Long v. City of Glendale*, 93 P.3d 519, 528 ¶ 27–28 (Ariz. App. 2004). Arizona has adopted a "permissive approach" to the parol evidence rule, under which a court "must first consider the allegations made by the proponent of . . . extrinsic evidence as to the appropriate interpretation of the writing in light of the evidence alleged." *Id.* (citing *Taylor*, 854 P.2d at 1140). Considering these allegations and the language of the writing, a court must then determine, as a matter of law, whether the "contract language is reasonably susceptible" to the meaning the proponent of the extrinsic evidence asserts. *Taylor*, 854 P.2d at 1145–46; *see Long*, 93 P.3d at 528 ¶¶ 28, 31.

In making this evaluation at the motion-to-dismiss stage, a trial court "is obliged to accept all of the factual allegations of the proponent of the evidence as true." *Long*, 93 P.3d at 528 ¶ 31. But "even under Arizona's more permissive approach . . . a proponent of parol evidence cannot completely escape the confines of the actual writing." *Id.* at 529 ¶ 32. This is because "one cannot claim one is 'interpreting' a written clause with extrinsic evidence if the resulting 'interpretation' unavoidably changes the meaning of the writing." *Id.* at 529 ¶ 34. Thus, "[i]n appropriate circumstances, the court can accept as true the allegations in the complaint and still determine that the written language is not reasonably susceptible of the meaning asserted." *Id.* at 529 ¶ 32.

Here, the only allegation relevant to the contracting parties' intent is the statement that the non-solicitation agreement "was executed as a condition of employment with AUJS." (Doc. 1-2 at 19). As alleged, the agreement defines the "Company" to mean "Universal Protection Service," and prevents Defendant, "for a period of one year immediately following the termination of employment with the Company," from directly

or indirectly soliciting "business for products or services that compete with those of Universal Protection Service, from any of the Company's customers with whom the employee had contact during his or her employment." (*Id.*). Plaintiffs assert that these terms mean that Defendant is prohibited from soliciting AUJS customers with whom he came into contact while employed at AUJS. (Doc. 28 at 4, 7).

Taking Plaintiffs' allegation as true, the Court nonetheless finds that the language in the agreement is not reasonably susceptible to the meaning Plaintiffs propose. The agreement plainly restricts Defendant not from soliciting AUJS customers, but from soliciting UPS customers whom Defendant contacted while working at UPS. (*See* Doc. 1-2 at 19). Further, while the agreement only restricts Defendant from soliciting such customers for one year after being terminated from UPS, the complaint alleges that AUJS rather than UPS employed Defendant. (*Id.* at 14, 16, 18–19, 21, 23, 25). Because the complaint does not allege that Defendant worked at UPS, came into contact with UPS customers while working at UPS, or was terminated from UPS, the complaint does not allege that any of Defendant's actions breached the agreement.

Plaintiffs argue, however, that the agreement "may be assigned" from UPS to AUJS, with the implication that AUJS would then be able to enforce it against Defendant. (Doc. 28 at 3–4). An assignment requires "intent to assign, intent to receive, and valuable consideration." *Supplies for Indus., Inc. v. Christensen*, 659 P.2d 660, 662 (Ariz. App. 1983); *Certified Collectors, Inc. v. Lesnick*, 570 P.2d 769, 771 (Ariz. 1977) (citation omitted). But the complaint alleges that Defendant made the agreement "with UPS," and does not allege that the agreement was expressly assigned. (*See* Doc. 1-2). Additionally, the complaint does not allege that AUJS gave valuable consideration supporting an assignment of UPS's rights in the agreement to AUJS. The complaint therefore does not plausibly allege that the agreement was assigned.[5]

---

[5] Plaintiffs do not argue that AUJS is a third-party beneficiary of the agreement. (*See* Doc. 28 at 3). As the Court noted in its order denying preliminary relief, AUJS is not a third-party beneficiary of the agreement because nothing in the text of the agreement indicates an intention to benefit AUJS. (Doc. 31 at 5 (citing *Norton v. First Fed. Sav.*, 624 P.2d 854, 856 (Ariz. 1981))).

Further, even if UPS's rights under the contract had been effectively assigned to AUJS, Plaintiffs' assignment theory would not advance their breach of contract claim. "An assignment does not affect or change any provisions of the contract." 6A C.J.S. Assignments § 30 (May 2023 Update) (citing *Kasel v. Union Pac. R.R.*, 865 N.W.2d 734, 738 (Neb. 2015)). Rather, an "assignee steps into the shoes of her assignor," and "can stand in no better position than the assignor." *Vig v. Nix Project II P'ship*, 212 P.3d 85, 91 ¶ 25 (Ariz. App. 2009); *see also* 6A C.J.S. Assignments § 88. This being so, it follows that the "assignee has a legal right if the assignor had one," and vice versa. 9 Corbin on Contracts § 47.3 (2022); *see also* 6A C.J.S. Assignments § 111 ("An assignee cannot sue if the assignor could not have maintained the action."); *Martinez v. Bucyrus-Erie Co.*, 547 P.2d 473, 474 (Ariz. 1975) ("[T]he right acquired by the assignee is simply that previously possessed by the assignor."). As discussed, the agreement gives UPS the right to have Defendant refrain from soliciting certain customers for one year following the termination of his employment with UPS. But Plaintiffs have not alleged that Defendant was ever employed or terminated by UPS. On the facts alleged, then, UPS would not be able to state a claim for breach of the agreement. Transferring its rights against Defendant to AUJS cannot change this fact because an assignee can stand in no better position than the assignor. Thus, Plaintiffs have not stated a claim for violation of the agreement, regardless of which specific Plaintiff has the right to enforce it.

The Court will dismiss Plaintiffs' claim for breach of contract.[6] The Court therefore does not address the question of whether the restrictive covenant in the agreement is reasonable.

---

[6] The Court speculated in its order denying preliminary relief that Plaintiffs might really be seeking reformation of the writing to reflect the parties' intentions in executing the agreement. (Doc. 31 at 8–9). But Plaintiffs have not argued a reformation theory or alleged a claim for reformation, which is a distinct claim from breach of contract. *See HSBC Bank USA, N.A. v. Cluff*, 2018 WL 5117167, at *3 ¶ 13 (Ariz. App. 2018) (citing *Long*, 93 P.3d at 526 ¶ 17) ("Reformation is a claim that seeks relief based on fraud or mistake."); Restatement (Second) of Contracts § 378 cmt. c (Am. L. Inst. 1981) (describing breach of contract and reformation as inconsistent remedies); *and compare* A.R.S. § 12-543(3) (statute of limitations for reformation), *with* A.R.S. § 12-548(A) (statute of limitations for a debt founded on a written contract); *cf. Double AA Builders v. Grand State Constr. L.L.C.*, 114 P.3d 835, 843–44 ¶ 45 (Ariz. App. 2005) (collecting cases) (distinguishing a breach of contract claim from the equitable remedy of promissory estoppel). Thus, the viability—if

### b. Tortious Interference with Contract

In Arizona, to state a claim for intentional interference with contractual relations a plaintiff must allege facts showing: "(1) the existence of a valid contractual relationship; (2) knowledge of the relationship" by the interferer; "(3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) (citation omitted). The impropriety element oridinarily requires that a defendant's actions be "improper as to motive or means." *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 ¶ 20 (Ariz. 2005). Arizona has adopted the approach of the Restatement (Second) of Torts to determining impropriety. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985). In general terms, this approach involves "weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Snow*, 730 P.2d at 212 (citation omitted).

The complaint adequately alleges that Defendant intentionally induced AUJS clients to breach valid contracts with AUJS that Defendant knew of, causing damage to AUJS. (*See* Doc. 1-2 at 24–25). But Defendant argues the tortious interference claim against him must be dismissed because soliciting AUJS customers was not a breach of the non-solicitation agreement, and was therefore not improper. (Doc. 23 at 6; Doc. 30 at 3, 7–8). Plaintiffs argue that Defendant acted improperly by using his knowledge of AUJS's proprietary and confidential information, including pricing and business strategies, to induce its clients to break their contracts with AUJS. (Doc. 28 at 8).

In Arizona, using confidential information to induce breach of contract can satisfy the impropriety element. *GlobalTranz Enters. Inc. v. Shipper's Choice Global LLC*, 2017 WL 11609546, at *9 (D. Ariz. Feb. 23, 2017); *see also Miller v. Hehlen*, 104 P.3d 193, 196, 202 ¶¶ 3, 29–33 (Ariz. 2005) (finding the defendant's use of a customer list to solicit customers of a former employer was not improper where the former employer gave her the list after her employment ended); *Orca Comms. Unlimited, LLC. v. Noder*, 314 P.3d 89, 97

---

any—of a reformation claim is not relevant to whether Plaintiffs' breach of contract claim as presently alleged should be dismissed.

¶ 27 (Ariz. App. 2013) (noting that misuse of confidential information could be used to prove impropriety at trial), *ordered partly depublished on other grounds*, 337 P.3d 545 (Ariz. 2014). The complaint alleges that Defendant had access to and was aware of AUJS's confidential information (including specific pricing and other confidential contract information), that he could have easily used this information to undercut AUJS prices, and that he did induce several AUJS clients to do business with a Mazzon Industries client rather than with AUJS. (Doc. 1-2 at 17, 19–22). It is a reasonable inference from these allegations that Defendant used confidential AUJS information in soliciting these clients. The Court will not dismiss Plaintiffs' tortious interference claim.[7]

### c. Breach of the Duty of Loyalty

Plaintiffs argue they have adequately stated a claim for breach of the duty of loyalty by alleging that, while employed by AUJS, Defendant used an AUJS laptop to prepare pitches he would later use to secure clients for Mazzon Industries. (Doc. 28 at 7–8; *and see* Doc. 1-2 at 19–20, 25). Defendant argues that this action was not a breach of his duty of loyalty because employees may prepare to compete with their employer while still employed. (Doc. 23 at 9; Doc. 30 at 6–7).

In Arizona, "an employee owes his or her employer a fiduciary duty, which includes a duty of loyalty." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977 ¶ 53 (Ariz. App. 2008) (citing *McAllister Co. v. Kastella*, 825 P.2d 980, 982–83 (Ariz. App. 1992) (cleaned up)). As a corollary of this duty, although an employee may generally "prepare to compete with

---

[7] The Court notes, however, that if it is shown that the confidential information used to induce breach of contract rises to the level of a trade secret, this claim may be preempted by the Arizona Uniform Trade Secrets Act ("AUTSA"). *Compare* A.R.S. § 44-407(A), (B)(1) (providing that the AUTSA "displaces conflicting tort . . . laws . . . providing civil remedies for misappropriation of a trade secret," but not "[o]ther civil remedies that are not based on misappropriation of a trade secret"), *with id.* § 44-401(2), (4) (defining "misappropriation" to include disclosure or use of a trade secret, and defining "trade secret" to mean information that "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by . . . persons who can obtain economic value from its disclosure or use," and that is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy,"); *see also Orca*, 337 P.3d at 549–50 (holding that claims for misappropriation of confidential information falling outside the AUTSA definition of a trade secret are not displaced); *Universal Engraving Inc. v. Metal Magic, Inc.*, 602 Fed. App'x 367, 369 (9th Cir. 2015) (reasoning that "a claim that was encompassed by a claim for misappropriation of trade secrets would still be displaced even if it could be given a different label.").

a current employer, 'the tactics that [he] may use . . . are subject to legal limits.'" *Taser Int'l, Inc. v. Ward*, 231 P.3d 921, 928 ¶ 27 (Ariz. App. 2010) (citing Restatement (Third) of Agency § 8.04 cmt. b (Am. L. Inst. 2006)). One such limit is the agent's duty "not to use property of the principal for the agent's own purposes." *Id.* (citing Restatement (Third) of Agency § 8.05).

The complaint alleges that Defendant, while still employed by AUJS, used AUJS's property (a company laptop) for Defendant's own purposes (preparing to compete with AUJS by creating client pitches). (Doc. 1-2 at 19–20, 25). These allegations are sufficient to state a claim for breach of the duty of loyalty. *See Ward*, 231 P.3d at 928–29 ¶ 29 (suggesting that using an employer-assigned laptop to develop a competing company can support a claim for breach of the duty of loyalty). The Court will not dismiss this claim.[8]

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to dismiss the complaint, (Doc. 23), is granted in part and denied in part as specified herein.

**IT IS FURTHER ORDERED** that Plaintiffs' claim for breach of contract is dismissed.

**IT IS FINALLY ORDERED** that Defendant shall answer the complaint within 14 days of the issuance of this order.

Dated this 15th day of June, 2023.

James A. Teilborg
Senior United States District Judge

---

[8] In their response to the motion to dismiss Plaintiffs requested leave to amend the complaint if Defendant's motion were granted and the complaint dismissed. (*See* Doc. 28 at 8–9). Because the Court will grant the motion to dismiss only in part, and will not dismiss the complaint in its entirety, the Court will not now decide whether to grant leave to amend. Rather, the Court will set a Rule 16 scheduling conference after which it will issue a scheduling order. In that order the Court will set a deadline for amending the complaint. Plaintiffs may file a motion for leave to amend the complaint before the expiration of that deadline, being sure to comply with Local Rule of Civil Procedure 15.1 and any other relevant rules.