**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Universal Services of America LP, et al., | No. CV-23-00463-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Daniel Mazzon, | |
| Defendant. | |

Pending before the Court are Plaintiffs Universal Building Maintenance LLC d/b/a Allied Universal Janitorial Services ("AUJS"), Universal Protection Service LP, and Universal Services of America LP's (collectively, "Plaintiffs") fourteen Motions to Compel various responses from Defendant Daniel Mazzon ("Defendant"). (Doc. 44–45, 47–58). Defendant has filed individual responses to each motion. (Doc. 60–73). Also pending before the Court are the parties' Joint Motion for Discovery Dispute, (Doc. 40), and the parties' Joint Motion for Discovery Dispute, (Doc. 74). The Court now rules.

## I.      BACKGROUND

Plaintiffs filed the instant action in Maricopa County Superior Court, alleging three counts: (1) breach of contract, (2) tortious interference with contract, and (3) breach of the duty of loyalty. (*See generally* Doc. 1-2). The action was subsequently removed to federal court. (Doc. 1). In a previous order, this Court dismissed Plaintiffs' breach of contract claim, leaving just the tortious interference with contract and breach of duty of loyalty claims remaining. (*See generally* Doc. 32).

1    The parties filed a Joint Motion for Discovery Dispute on December 18, 2023,
2    informing the court that "[t]he Parties widely disagree over whether Plaintiffs' discovery
3    requests are relevant to this action." (Doc. 40 at 3). The Court issued an order on December
4    19, 2023, noting various discrepancies in the parties' filing and requiring Plaintiffs to file
5    separate motions to compel each discovery request on which Plaintiffs seek to have this
6    court order further production. (*See generally* Doc. 41). Pursuant to that order, Plaintiffs
7    filed the pending fourteen motions to compel Defendant's responses as to various requests
8    for production ("RFPs") and interrogatories.

9    **II.     LEGAL STANDARD**

10    **A. Motions to Compel**

11    The Federal Rules permit a party to file a motion to compel an "answer, designation,
12    production, or inspection" in one, some, or all of the following relevant circumstances: (1)
13    when "a party fails to answer an interrogatory submitted under Rule 33," and (2) when "a
14    party fails to produce documents . . . under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

> "The party seeking to compel discovery has the burden of
> establishing that its request satisfies the relevancy
> requirements of Rule 26(b)(1). Thereafter, the party opposing
> discovery has the burden of showing that the discovery should
> be prohibited, and the burden of clarifying, explaining[,] or
> supporting its objections." *Bryant v. Ochoa*, No. 07-cv-00200,
> 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). "Those
> opposing discovery are 'required to carry a heavy burden of
> showing' why discovery should be denied." *Gottesman v.
> Santana*, No. 16-cv-02902, 2017 WL 5889765, at *3 (quoting
> *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.
> 1975)).

*Washington v. Freedom of Expression LLC*, No. CV-21-01318-PHX-MTL, 2022 WL
1081200, at *1 (D. Ariz. Apr. 11, 2022). Rule 26(b)(1) states that the scope of discovery
includes any non-privileged matter that is relevant to some claim or defense in the case,
and that is proportional to the needs of the case, considering various factors. *See* Fed. R.
Civ. P. 26(b)(1).

//

**B. Claims in Plaintiffs' Action**

This Court has previously delineated the legal standards for the two remaining claims in this action, (*see generally* Doc. 32), but the Court reiterates the standards here.

In Arizona, to state a claim for intentional interference with contractual relations a plaintiff must allege facts showing: "(1) the existence of a valid contractual relationship; (2) knowledge of the relationship" by the interferer; "(3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) (citation omitted). The impropriety element ordinarily requires that a defendant's actions be "improper as to motive or means." *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 ¶ 20 (Ariz. 2005). Arizona has adopted the approach of the Restatement (Second) of Torts to determining impropriety. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985). In general terms, this approach involves "weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Snow*, 730 P.2d at 212 (citation omitted).

In Arizona, "an employee owes his or her employer a fiduciary duty, which includes a duty of loyalty." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977 ¶ 53 (Ariz. App. 2008) (citing *McAllister Co. v. Kastella*, 825 P.2d 980, 982–83 (Ariz. App. 1992) (cleaned up)). As a corollary of this duty, although an employee may generally "prepare to compete with a current employer, 'the tactics that [he] may use . . . are subject to legal limits.'" *Taser Int'l, Inc. v. Ward*, 231 P.3d 921, 928 ¶ 27 (Ariz. App. 2010) (citing Restatement (Third) of Agency § 8.04 cmt. b (Am. L. Inst. 2006)). One such limit is the agent's duty "not to use property of the principal for the agent's own purposes." *Id.* (citing Restatement (Third) of Agency § 8.05).[1]

**III. DISCUSSION**

**A. Plaintiffs' RFP Number 1**

Plaintiffs' first motion to compel contains their request for all communications of

---

[1] *See* note 5, *infra*, for further discussion of a breach of duty of loyalty claim that provides relevant context for Plaintiffs' motions to compel at issue here.

any kind between Defendant and any customers of Plaintiffs during Defendant's employment with Plaintiff AUJS, from January 1, 2020, to present. (Doc. 44 at 6). Plaintiffs argue that they are entitled to this discovery "in order to uncover the full extent of Defendant's misconduct." (*Id.* at 2). Plaintiffs also argue that whether Plaintiffs also have access to the information requested does not change Defendant's obligations to produce the requested documentation. (*Id.* at 2–3). Plaintiffs further state that even if Defendant articulated a valid objection, Defendant at minimum "failed to respond to the non-objectionable portions of the request." (*Id.* at 3).

Defendant argues that Plaintiffs' first RFP constitutes an improper fishing expedition because the RFP "demands a great wealth of communications that are well beyond the needs of the case, bear no relevance to this matter, and are already in possession, custody, and control of the Plaintiffs." (Doc. 60 at 3). The Court addresses several issues raised by Plaintiffs' first RFP below.

First, and as noted in its previous order, the Court again notes Defendant presumably does not have access to any communications he made using Plaintiffs' computers. Thus, to the extent that Plaintiffs request communications located exclusively on Plaintiffs computers and/or servers, the Court denies the request. *See Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 465 (D. Ariz. 2020), aff'd, No. 20-17210, 2022 WL 259937 (9th Cir. Jan. 27, 2022) (generally, a party must produce documents in that party's possession, custody, or control).

Next, Defendant has asserted that, pursuant to the Court's order requiring Plaintiffs to produce all contracts on which they intend to rely by December 29, 2023, (Doc. 43), Plaintiffs have produced just one contract—a March 2016 contract between AUJS and an entity titled LBV-RV Company VIII (hereinafter "LBV-RV Contract"). (Doc. 60 at 2). Defendant argues, and the Court agrees, that because Plaintiffs produced just the LBV-RV Contract, Plaintiffs' discovery as to their tortious interference with contract claim is limited to discovery relevant to just the LBV-RV Contract.

Finally, the Court notes that as for Plaintiffs' breach of duty of loyalty claim against

Defendant, Defendant indeed owed a duty of loyalty to Plaintiffs only while employed by Plaintiff AUJS.[2] Moreover, Plaintiffs' first RFP fails to request discovery regarding any particularized instances that Plaintiffs claim constituted a breach of the duty of loyalty by Defendant. As such, the Court finds that Plaintiffs' first RFP is an overly broad fishing expedition. Because the breach of duty of loyalty involves the use of company resources, the information required to formulate a good faith basis for requesting specific alleged instances of breach is in Plaintiffs' exclusive possession, custody, or control. Accordingly, the Court denies Plaintiffs' first RFP as to the breach of fiduciary duty of loyalty as an overbroad fishing expedition.[3]

Thus, the Court grants in part and denies in part Plaintiffs' motion regarding Plaintiffs' first RFP, noting the following limitations. The motion is granted to the extent that Defendant must make a good faith and diligent effort to locate and produce information stored on his personal electronic devices or in paper form relevant to the LBV-RV Contract, over the course of the full period of time Plaintiffs request. As to any other discovery requested in Plaintiffs' first RFP, Plaintiffs' motion is denied.

### B. Plaintiffs' RFP Number 2

Plaintiffs' second RFP asks Defendant to provide all communications between Defendant and any persons, companies, or entities that provide building services that took place from January 1, 2020, to present. (Doc. 45 at 6). Plaintiffs argue that the relevance of this request is "patent" because it will enable Plaintiffs to "inquire into the communications Defendant had with others regarding the provision or [sic] building services." (*Id.* at 2).

Defendant argues that Plaintiffs' second RFP is a brazen fishing expedition and asserts that Defendant never dealt with building services while he was employed by Plaintiff AUJS; instead, "his employment related exclusively to *janitorial* services." (Doc.

---

[2] *See* Section II.B., supra (explaining the legal standard for a breach of duty of loyalty claim).

[3] The Court notes that, as for Plaintiffs' later RFPs that pertain to particular entities, the Court has granted Plaintiffs' requests so long as Defendant ultimately did enter into business with the particularized entities because in those instances, Plaintiffs indeed made more specific requests.

61 at 3 (emphasis in original)). Defendant urges the Court to reject Plaintiffs' second RFP outright as an abuse of the discovery process. (*Id.*).

The Court agrees with Defendant that Plaintiffs' second RFP is overly broad and seeks information irrelevant to the claims remaining in this action. To the extent Defendant never dealt in building services while employed by Plaintiff AUJS or after his employment terminated, and thus Defendant is asserting he has no communications to produce, the Court denies Plaintiffs' second RFP.[4] Moreover, and more importantly, whether Defendant communicated with any entities that were not clients of Plaintiffs is irrelevant to the claim of tortious interference, as this claim pertains to Defendant's alleged dealings with Plaintiffs' contracts and clients, not building services clients in general. Defendant's alleged dealings with Plaintiffs' clients is already covered in Plaintiffs' first RFP. As for Plaintiffs' claim of breach of duty of loyalty, the Court reiterates its reasoning in its discussion of Plaintiffs' RFP Number 1. Thus, the Court denies Plaintiffs' motion regarding their second RFP.

### C. Plaintiffs' RFP Number 3

Plaintiffs' third RFP pertains to Defendant's communications with any persons, companies, or entities that are customers or prospective customers of building services. (Doc. 57 at 6). Plaintiffs argue that the relevance of this RFP is also "patent" because "Plaintiffs are entitled to inquire into the communications defendant had regarding the provision of building services, the very thing he provided on behalf of AUJS and now provides on behalf of [his company]." (Doc. 57 at 2). Plaintiffs further argue that whether the materials requested are in Plaintiffs' possession should not impact the Court's analysis.

Defendant reiterates his argument that he never dealt in building services while employed by Plaintiff AUJS. (Doc. 62 at 3). Defendant further argues that Plaintiffs "refuse to tailor their RFP to the matters at issue in this case because they attempting [sic] to uncover irrelevant information regarding [Defendant's] present business activities," and

---

[4] The Court notes that Plaintiffs dispute this assertion, arguing that building services are the very services Defendant provided while employed. The Court believes the parties likely are arguing over semantics. Regardless, the Court denies Plaintiffs' motion for reasons independent from this distinction.

that this Court "has already established that [Defendant] may compete with Plaintiffs." (*Id.*).

The Court finds that Plaintiffs' third RFP is overbroad for the same reasons stated in the Court's discussion of Plaintiffs' second RFP—namely, that Defendant's communications with any entities not already covered by Plaintiffs' first RFP (that is, Plaintiffs' disclosed contract) are irrelevant to Plaintiffs' tortious interference claim, and that Plaintiffs' request is a fishing expedition as to Plaintiffs' breach of duty of loyalty claim. Thus, the Court denies Plaintiffs' motion pertaining to their third RFP.

**D.  Plaintiffs' RFP Number 4**

Plaintiffs' fourth RFP requests that Defendant provides all communications of any kind, sent by Defendant from Defendant's email address assigned to him by Plaintiffs, to any personal email address, from January 1, 2020 to present. (Doc. 47 at 6). Plaintiffs argue that they are "entitled to inquire into ways Defendant surreptitiously schemed, while employed by AUJS, to conduct business on behalf of [Defendant's company] using AUJS resources and computers." (*Id.* at 2). Plaintiffs further argue that whether Plaintiffs already possess the communications they have requested should not sway the Court to deny their motion because other courts in this Circuit have rejected the argument. (*Id.* at 3).

Defendant argues that the email address from which Plaintiffs' ask Defendant to produce communications is in Plaintiffs' exclusive "access, custody, and control." (Doc. 63 at 2). Moreover, Defendant argues, if any emails relevant to Defendant's alleged misconduct existed, Plaintiffs should have produced them pursuant to Fed. R. Civ. P. 26(a)(1), which requires a party to produce anything it "may use to support its claims or defenses." (*Id.*).

The Court first notes that any communication Defendant sent via his work email to anyone other than his own personal email is almost certainly *not* in Defendant's possession, custody, or control because Defendant presumably no longer has access to his work email address. Thus, at a minimum, Defendant need not produce such communications because Defendant cannot produce them. As for communications that Defendant may have sent

from his work email to his own personal email, the Court is persuaded by Plaintiffs' citations to various cases in which courts have compelled production when both sides possess the same documentation. Thus, the Court grants Plaintiffs' motion, only as to any communications Defendant sent from his work email address to an email address in Defendant's possession, custody, or control; moreover, the motion is granted only as to (1) the LBV-RV Contract, over the course of the full period of time Plaintiffs request, and (2) Defendant's alleged breach of duty of loyalty, starting on January 1, 2020, and ending on the date Defendant's employment terminated.[5] The Court otherwise denies Plaintiffs' motion regarding their fourth RFP.

### E.  Plaintiffs' RFP Number 5

Plaintiffs' fifth RFP asks Defendant to provide all documents, such as contracts, evidencing a business relationship between Defendant and any entity other than Plaintiffs, including any drafts thereof, from January 1, 2020, to present. (Doc. 48 at 5). Plaintiffs argue that they are entitled to inquire into "the nature of the relationships between Defendant and companies such as [list of examples]," as they are "at the core of this lawsuit." (*Id.* at 2). Plaintiffs further assert that they "are entitled to discover whether there are additional, unknown improper contractual relationships that [D]efendant entered into." (*Id.* at 2).

Defendant argues that requesting production of all contracts with any person will yield documents "so far afield from relevance . . . that it cannot be reasonably responded to." (Doc. 64 at 3). Defendant further argues that Plaintiffs are obligated—and here, have failed—to articulate a good faith basis for bringing their subsequent discovery requests. (*Id.*).

The Court agrees with Defendant that Plaintiffs' fifth RFP is woefully overbroad, and that Plaintiffs have not articulated a sufficient basis for its breadth. Indeed, "any" contract with "any" entity includes a vast array of irrelevant documents and demonstrates

---

[5] The Court notes that, given the restrictions it has imposed, Plaintiffs' fourth RFP likely will lead to some production that is duplicative of Plaintiffs' first RFP. To the extent that this is true, Defendant need only provide documentation of the relevant communications once.

Plaintiffs' questionable reasonableness in crafting their RFPs. Moreover, Plaintiffs have previously been ordered to produce every contract on which they intend to rely, and Defendant reported that Plaintiffs have produced just one contract. The Court reiterates that the only two claims remaining in this action revolve around interference with *Plaintiffs'* contracts with individuals; thus, all relevant contracts should be in the possession, custody, or control of Plaintiffs. Whether Defendant has also entered into other contracts is of minimal consequence, absent Plaintiffs' specific allegations or explanations to the contrary. As such, the Court denies Plaintiffs' motion regarding their fifth RFP.

### F.  Plaintiffs' RFP Number 6

Plaintiffs' sixth RFP requests that Defendant produce all documents of solicitations, marketing materials, or other promotional materials sent to anyone other than Plaintiffs, from January 1, 2020, to present. (Doc. 49 at 5). Plaintiffs argue that they "are entitled to discover what efforts Defendant made to improperly market and solicit [Defendant's company] to potential customers." (*Id.* at 2).

Defendant argues that Plaintiffs' RFP is overbroad, as it does not specify any details about the types of companies, purpose of the material, or whether they were a customer. (Doc. 65 at 3). Defendant further states that he "sent a great deal of advertising material during his employment," and that "AUJS is in sole possession, custody, and control of such material." (*Id.*).

The Court reiterates its earlier discussion limiting the scope of Plaintiffs' discovery in its first RFP. As such, the Court grants in part and denies in part Plaintiffs' motion regarding Plaintiffs' sixth RFP, noting the following limitations. The motion is granted to the extent that Defendant must make a good faith and diligent effort to locate and produce documents from his personal communications (i.e., those made using his personal contact information and/or from sources not belonging to Plaintiffs) relevant to the LBV-RV Contract, over the course of the full period of time Plaintiffs request. As to any other discovery requested in Plaintiffs' sixth RFP, Plaintiffs' motion is denied.

//

### G. Plaintiffs' RFP Number 8

Plaintiffs' eighth RFP seeks all calendars, planners, journals, or other documents reflecting Defendant's schedule and business activities from January 1, 2020, to present. (Doc. 50 at 5). Plaintiffs argue that they "are entitled to discover the specifics of Defendant's activities during the relevant time period" because it would "aid in that investigation." (*Id.* at 2).

Defendant argues that Plaintiffs' eighth RFP is again overbroad and fails to denote any specifics as to the relevant documents given the limitations already placed on Plaintiffs' claims. (Doc. 66 at 3). Thus, Defendant argues, Plaintiffs' eighth RFP, like others, constitutes an improper fishing expedition to "uncover [Defendant's] present clientele." (*Id.*).

The Court again reiterates its discussion regarding Plaintiffs' first RFP. As such, the Court grants in part and denies in part Plaintiffs' motion regarding Plaintiffs' eighth RFP, noting the following limitations. The motion is granted to the extent that Defendant must make a good faith and diligent effort to locate and produce documents in his possession, custody, or control relevant to the LBV-RV Contract, over the course of the full period of time Plaintiffs request. As to any other discovery requested in Plaintiffs' eighth RFP, Plaintiffs' motion is denied.

### H. Plaintiffs' RFP Number 9

Defendant correctly points out that Plaintiffs' ninth RFP is identical to Plaintiffs' fourth RFP. Thus, the Court denies Plaintiffs' motion as to their ninth RFP as moot.

### I. Plaintiffs' RFP Number 10

Plaintiffs' tenth RFP asks Defendant to produce all communications between Defendant and Ace Building Maintenance and/or any agent or representative thereof, from January 1, 2020, through present. (Doc. 52 at 5). Plaintiff argues that the complaint states that while Defendant was employed by Plaintiff AUJS, Defendant used his work laptop to access a proposal he offered to Ace Building Maintenance. (*Id.* at 2). As such, Plaintiffs argue, they are entitled to discovery into "the content of communications that Defendant

1  had with Ace building Maintenance." (*Id.*).

2  　　　Defendant argues that Plaintiffs issued their tenth RFP for an improper purpose and

3  have failed to limit the request to the relevant scope dictated by the remaining claims in the

4  action. (Doc. 68 at 3). Specifically, Defendant asserts that because Plaintiffs argue that this

5  RFP is relevant to breach of duty of loyalty, discovery should be limited to reflect the fact

6  that a duty of loyalty exists only for the period a person is employed. (*Id.*). Finally,

7  Defendant argues that given the improper purpose and overbreadth, this Court should reject

8  the RFP outright. (*Id.*).

9  　　　The Court first notes that Plaintiffs' tenth RFP almost certainly will not lead to the

10  production of any evidence relevant to Plaintiffs' tortious interference claim, as Plaintiffs

11  do not allege that Ace Building Maintenance was a party to the LBV-RV Contract. As for

12  the breach of duty of loyalty claim, the Court first notes that any communications between

13  Defendant and Ace Building Maintenance that took place using Plaintiff AUJS equipment

14  or Defendant's AUJS email address are solely in Plaintiffs' possession, custody, or control.

15  However, the Court acknowledges that, to the extent that Defendant ultimately conducted

16  business with Ace Building Maintenance, Plaintiffs have at least requested documents

17  relating to a particularized allegation of breach of duty of loyalty.[6] As such, the Court grants

18  Plaintiffs' motion regarding their tenth RFP in part, subject to the following limitations:

19  Defendant must produce any communications with Ace Building Maintenance in his

20  possession, custody, or control that (1) pertain to janitorial or building services, and (2)

21  contain or otherwise refer to materials Defendant obtained from Plaintiff AUJS while

22  employed there. As to any other discovery requested in Plaintiffs' tenth RFP, Plaintiffs'

23  motion is denied.

24  　　　As for Plaintiffs' subpoena intended for Ace Building Maintenance, the Court finds

---

[6] *See Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1052–53 (D. Ariz. 2010) (discussing a breach of fiduciary duty of loyalty claim in Arizona and concluding that genuine issues of material fact remained concerning whether the defendant's subsequent development of a competing product was proximately caused by his alleged breach of fiduciary duty). The Court thus finds that although Defendant's fiduciary duty was cut off when he no longer was employed by Plaintiff AUJS, subsequent communications may nonetheless be relevant to Plaintiffs' breach of duty of loyalty claim.

that, although a subpoena at this stage is not prohibited, it is at least premature considering Defendant has not yet produced any communications that indicate that Defendant has even entered into any contract with Ace Building Maintenance. As such, Plaintiffs' subpoena is quashed.

### J.  Plaintiffs' RFP Number 11

Plaintiffs' eleventh RFP requests all communications between Defendant and Global Roofing Group and/or any agent or representative thereof, from January 1, 2020, to present. (Doc. 53 at 5). Plaintiffs argue that Global Roofing Group is another potential partner whom Defendant targeted for his own company while using company equipment. (*Id.* at 2). As such, Plaintiffs argue, Plaintiffs are entitled to inquire into Defendant's communications with Global Roofing Group to uncover "the full extent of Defendant's misconduct." (*Id.*).

Defendant argues that Plaintiffs' eleventh RFP "bears no relevance" to either of the two claims remaining in this action because Global Roofing Group "was not a client of Defendant during his time at AUJS, does not provide janitorial services, and the document disclosed by Plaintiffs indicate Defendant was offering to assist in marketing and branding for Global Roofing Group." (Doc. 69 at 3). Defendant points out that breach of the duty of loyalty exists when an employee uses company resources to compete with an employer, while in this case, Defendant's contact with Global Roofing Group was an unrelated enterprise and thus irrelevant. (*Id.*).

The Court first notes the same issues as noted above—the only claim to which this discovery could be relevant is the breach of duty of loyalty claim, and any communications Defendant made from his AUJS computer and/or email address are no longer in Defendant's possession, custody, or control. For these reasons, and because Defendant's contact with Global Roofing Group while employed was related to marketing, not janitorial or building services, the Court denies Plaintiffs' motion regarding their eleventh RFP.

### K.  Plaintiffs' RFP Number 12

Plaintiffs' twelfth RFP requests all communications between Defendant and

1    Restoration HQ and/or any agent or representative thereof, from January 1, 2020, to
2    present. (Doc. 54 at 5). Plaintiffs argue that Restoration HQ is another entity to whom
3    Defendant offered the services of his own company, using AUJS equipment, while still
4    employed by AUJS. (*Id.* at 2). As such, Plaintiffs argue that they are "entitled to inquire
5    into the content of communications that Defendant had with Restoration HQ." (*Id.*).

6        Defendant argues that his communications with Restoration HQ are irrelevant
7    because Restoration HQ was not a client of Plaintiffs (or Defendant), the documents
8    Plaintiff produced "indicate Defendant was offering to assist in marketing and branding for
9    Restoration," and the breach of a duty of loyalty would occur through the use of an
10   employer's resources, not through communications with a new potential client. (Doc. 70
11   at 3).

12       The Court reiterates its discussion in addressing Plaintiffs' eleventh RFP. For the
13   same reasons, the Court denies Plaintiffs' motion regarding their twelfth RFP. Also for the
14   same reasons, the Court quashes Plaintiffs' subpoena intended for Restoration HQ.

15       **L. Plaintiffs' Interrogatory Number 3**

16       Plaintiffs' third interrogatory asks Defendant to provide identities of everyone to
17   whom Defendant had provided building services or consulting relating to building services
18   since January 1, 2020. (Doc. 58 at 5). Plaintiffs argue that they are entitled to these
19   identities "[i]n order to discover the full extent of Defendant's misconduct," and "to
20   discover whether there are additional, unknown individuals and entities" to whom
21   Defendant provided such services. (*Id.* at 2).

22       Defendant argues that the clientele of his new company "are not even related to
23   Defendant's former employment," so Plaintiffs should not be entitled to the identities
24   because they are irrelevant. (Doc. 71 at 3). Defendant further argues that Plaintiffs are
25   merely "attempting to uncover irrelevant information regarding [Defendant's] present
26   business activities," and that this court should reject such an overbroad discovery request
27   as "an abuse of the discovery process." (*Id.*).

28       The Court reiterates its discussion limiting the scope of Plaintiff's first RFP. Thus,

the Court grants in part and denies in part Plaintiffs' motion regarding Plaintiffs' third interrogatory, noting the following limitations. The motion is granted to the extent that Defendant must make a good faith and diligent effort to locate and provide identities from his personal sources (i.e., those contacted using his personal contact information and/or from sources not belonging to Plaintiffs) relevant to the LBV-RV Contract, over the course of the full period of time Plaintiffs request. As to any other discovery requested in Plaintiffs' third interrogatory, Plaintiffs' motion is denied.

### M. Plaintiffs' Interrogatory Number 4

Plaintiffs' fourth interrogatory seeks the identities whom Defendant has contacted to solicit building services or consulting relating to building services since January 1, 2020. (Doc. 55 at 5). Plaintiffs argue that they are entitled to these identities because it will enable them to discover "more about the tortious conduct that Plaintiffs are already aware about," as well as "whether there are additional, unknown individuals and entities that Defendant improperly contacted." (*Id.* at 2).

Defendant argues that "Plaintiffs have not demonstrated any basis for [Defendant's] potential customer list to be relevant," and that Defendant "never offered, managed, or sold 'business services' during his time with AUJS." (Doc. 72 at 3). Defendant further points out that Plaintiff has produced just one contract with which Defendant allegedly interfered, and Defendant may compete with Plaintiffs, so Defendant's contacts "bear no relevance to this matter." (*Id.*).

The Court reiterates its discussion limiting the scope of Plaintiffs' first RFP. Thus, the Court grants in part and denies in part Plaintiffs' motion regarding Plaintiffs' fourth interrogatory, noting the following limitations. The motion is granted to the extent that Defendant must make a good faith and diligent effort to locate and provide identities from his personal sources (i.e., those contacted using his personal contact information and/or from sources not belonging to Plaintiffs) relevant to the LBV-RV Contract, over the course of the full period of time Plaintiffs request. As to any other discovery requested in Plaintiffs' fourth interrogatory, Plaintiffs' motion is denied.

1

### N. Plaintiffs' Interrogatory Number 5

Plaintiffs' fifth interrogatory requests that Defendant provide the phone number and email address by which Defendant communicated with anyone regarding providing building services or consulting relating to building services since January 1, 2020. (Doc. 56 at 5). Plaintiffs argue that "[a]ny telephone numbers and email addresses that Defendant used" to communicate with others about building services so that Plaintiffs can uncover more about Defendant's misconduct and discover whether there are further individuals with whom Defendant interacted. (*Id.* at 2).

Defendant argues that Plaintiffs' fifth interrogatory is improper and overbroad because it seeks "unfettered access" to Defendant's email address(es) and phone. (Doc. 73 at 3).

The Court first notes that it is unclear how obtaining *Defendant's* contact information will assist Plaintiffs in discovering more about Defendant's alleged misconduct or whether there are additional individuals with whom Defendant communicated, unless Plaintiffs intend to seek a subpoena of Defendant's phone(s) or email address(es). The Court agrees with Defendant's contention that Plaintiff is not entitled to "unfettered access" to Defendant's email or phone. Thus, because the only purpose for which Plaintiffs request Defendant's phone number(s) and email address(es) appears to be to request a subpoena, the Court denies Plaintiffs' motion to compel regarding their fifth interrogatory as overbroad.

### IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Compel RFP Number 1, (Doc. 44), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 2, (Doc. 45), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 3, (Doc. 57), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 4, (Doc. 47), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 5, (Doc. 48), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 6, (Doc. 49), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 8, (Doc. 50), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 9, (Doc. 51), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 10, (Doc. 52), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 11, (Doc. 53), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel RFP Number 12, (Doc. 54), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Interrogatory Number 3, (Doc. 55), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Interrogatory Number 4, (Doc. 58), is **GRANTED** in part and **DENIED** in part, as described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Interrogatory Number 5, (Doc. 56), is **DENIED**.

**IT IS FURTHER ORDERED** that the Joint Motion for Discovery Dispute, (Doc. 40), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant shall produce all documents or information required by this Order within 14 days of this Order.

/ / /

/ / /

**IT IS FINALLY ORDERED** that Plaintiffs' subpoenas as to Ace Building Management and Restoration HQ are quashed, which resolves the joint discovery dispute motion, (Doc. 74).

Dated this 17th day of January, 2024.

_____
James A. Teilborg
Senior United States District Judge