**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Universal Services of America LP, et al., | No. CV-23-00463-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Daniel Mazzon, | |
| Defendant. | |

Pending before the Court is Defendant Daniel Mazzon's ("Defendant") Motion for Summary Judgment. (Doc. 80). Plaintiffs Universal Services of America LP, Universal Protection Service LP, and Universal Building Maintenance LP (collectively, "Plaintiffs") have filed a response. (Doc. 81). Defendant filed a reply. (Doc. 82). The Court now rules.

**I.      BACKGROUND**

**A. Procedural Posture**

Plaintiffs filed the instant action in Maricopa County Superior Court, alleging three counts: (1) breach of contract, (2) tortious interference with contract, and (3) breach of the duty of loyalty. (*See generally* Doc. 1-2). The action was subsequently removed to federal court. (Doc. 1). In a previous order, this Court dismissed Plaintiffs' breach of contract claim, leaving just the tortious interference with contract and breach of duty of loyalty claims remaining. (*See generally* Doc. 32).

**B. Facts**

The following facts are either undisputed or recounted in the light most favorable to

the non-moving party. Any fact asserted by one party but left unaddressed by the other party will be considered undisputed for the purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2).

Plaintiffs are three related "security, janitorial, and other building maintenance services" companies: Universal Services of America, LP ("Universal"), Universal Protection Service, LP ("UPS"), and Universal Building Maintenance, LLC ("AUJS"). (Doc. 1-2 at 15–16). Defendant was employed at AUJS, a "janitorial services company," as a Business Development Manager beginning in May of 2016. (*Id.* at 16; Doc. 34 at 2). Defendant filed articles of organization for his new company, Mazzon Industries, effective December 28, 2022. (Doc. 80-6 at 2). Defendant resigned his employment with AUJS on January 4, 2023, effective January 18, 2023; Defendant's last day at work was January 5, 2023. (Doc. 1-2 at 18).

The following is an account of Defendant's interactions with various other entities before his employment at AUJS ended.

### i. Ace Building Maintenance

On September 9, 2022, Defendant corresponded via text message with an Account Executive for Ace Building Maintenance Company ("Ace"), a competitor of Plaintiffs'.[1] (Doc. 81-2 at 2; Doc. 81 at 5–6). Defendant met with the same Account Executive in person on September 13, 2022. (Doc. 81-2 at 4). Defendant followed up with the Account Executive via text message on September 14, 2022, and some short time later, the Account Executive responded, stating that one of Ace's Presidents "would love to chat" with Defendant and advising that Defendant should reach out to the President. (*Id.* at 6–7). On September 14 and 15, 2022, Defendant texted the President, asking her to call him when she was free. (*Id.* at 21).

Defendant met with the Account Executive and the two Ace Presidents at Ace's

---

[1] Indeed, the contract that Defendant ultimately signed with Ace characterized Ace in the following manner: "Ace is in the business of providing facility and maintenance services to commercial clients, including providing commercial property management clients with janitorial cleaning, green cleaning, and carpet and hard floor care programs." (Doc. 81-5 at 3).

office on or around September 27, 2022.[2] (Doc. 81 at 8). Defendant then set up a second meeting with the two Ace Presidents to take place on October 13, 2022, at Ace's office. (Doc. 81-2 at 16–17). On November 2, 2022, Defendant sent a formal document from Mazzon Industries to both Ace Presidents containing the following categories of information: (1) statement of work (daily, weekly, monthly, and quarterly), (2) quarterly events, and (3) pricing, including fee structures and payment method. (Doc. 81-4 at 2–13). Defendant created the document using his personal computer. (Doc. 81-1 at 42). However, Defendant used his AUJS-issued computer to "review[]" the document in "middle to end of September to early October [of 2022]." (*Id.*).

On December 14, 2022, Defendant emailed one of the Ace Presidents, asking whether the President had time the following day to discuss "the contract." (Doc. 81-6 at 9). Mazzon Industries and Ace completed a contract at approximately noon on January 4, 2023—the same day Defendant gave his two-week notice of resigning his employment to AUJS. (Doc. 81-5 at 2; Doc. 1-2 at 18). The contract was titled a "Sales Service Agreement" and incorporated as a "Statement of Work" the formal document Defendant had previously sent to Ace. (Doc. 81-5 at 3–16).

### ii. Restoration HQ

On September 15, 2022, Defendant sent a similar formal document from Mazzon Industries to the CEO of Restoration HQ, a "restoration company." (Doc. 81-2 26–32). The document contained the following categories of information: (1) scope of work (daily, weekly, monthly, and quarterly), (2) events and education (keynote speaker events and other social events),[3] and (3) pricing model, including fee structures and payment method.

---

[2] Plaintiffs cite to a screenshot of a text message conversation between the Account Executive and Defendant, (Doc. 81-2 at 13), to support this allegation; however, the Court was unable to locate any indication of the date on the screenshot to which Plaintiffs cite. The Court examined Defendant's deposition and located the following testimony: "Q: So one of the meetings would have been on or about the 26th, right—September 26th? A: According to the time line [sic] and the text messages that appears to be close to true, on the—the first meeting date." (Doc. 81-1 at 40).

[3] Plaintiffs assert that at least nine of the events Defendant advertised were scheduled to include speakers from AUJS clients—clients that Defendant "specifically sold to and serviced . . . during his tenure at AUJS." (Doc. 81 at 7). Plaintiffs further point out that, indeed, Plaintiffs reimbursed Defendant for the costs of entertaining those AUJS clients. (*Id.*).

(*Id.*).

On October 18, 2022, Defendant, through Mazzon Industries, entered into a contract with Restoration HQ. (Doc. 81-5 at 18–23). The contract, by its own terms, was a "Consulting Agreement"; in it, Defendant and Restoration HQ agreed to execute one or more statements of work, and that Defendant would perform the services described in each statement of work. (*Id.* at 18).

### iii. Global Roofing Group

On December 4, 2022, Defendant sent another similar formal document from Mazzon Industries to a National Enterprise Manager of Global Roofing Group, a "roofing company." (Doc. 81-6 at 2–7). The document contained the following categories of information: (1) statement of work (daily, weekly, monthly, and quarterly), (2) quarterly events, and (3) pricing, including fee structures and payment method. (*Id.*).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-

movant to establish the existence of material fact. *Id.*

A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

### III.  Plaintiffs' Tortious Interference Claim

Plaintiffs first assert a claim against Defendant for tortious interference with a contract. In Arizona, to state a claim for intentional interference with contractual relations a plaintiff must allege facts showing: "(1) the existence of a valid contractual relationship; (2) knowledge of the relationship" by the interferer; "(3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly." *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) (citation omitted). The impropriety element ordinarily requires that a defendant's actions be "improper as to motive or means." *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 ¶ 20 (Ariz. 2005). Arizona has adopted the

approach of the Restatement (Second) of Torts to determining impropriety. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985). In general terms, this approach involves "weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Snow*, 730 P.2d at 212 (citation omitted).

Defendant asserts the following deficiencies pertaining the above elements: (1) that Plaintiffs have not produced any valid contracts that Defendant could have interfered with; (2) that Defendant has not intentionally interfered with any contract; (3) that Defendant has not acted improperly; and (4) that no contracts related to Universal or UPS have been produced. (Doc. 80 at 6–9). Plaintiffs make no arguments in their response concerning the tortious interference with contract claim. (*See generally* Doc. 81).

The Court finds that Defendant has demonstrated that there is an absence of evidence to support Plaintiffs' tortious interference with contract claim. Specifically, Defendant points out that the only contract Plaintiffs have produced is a contract between AUJS and LBA RV- Company VIII, LP ("LBA RV"), which "was entered into prior to Defendant's employment with AUJS and terminated during Defendant's employment with AUJS," by its own contractual terms. (Doc. 80 at 7). Examination of the contract produced confirms Defendant's characterization. (*See* Doc. 80-4). Additionally, Defendant points out that "Plaintiffs have presented no evidence that Defendant induced any party to breach the [contract between AUJS and LBA RV]," or that the contract was breached, or that Defendant acted intentionally—all factual matters crucial to a tortious interference claim. (Doc. 80 at 8). Plaintiffs point to no evidence in the record that establishes a genuine issue of material fact regarding these factual issues; indeed, Plaintiffs' response is silent as to the tortious interference claim. As such, the Court finds it appropriate to grant Defendant's motion for summary judgment as to Plaintiffs' tortious interference with contract claim. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) (on motion for summary judgment, when a moving party has met its initial burden of showing the absence of evidence, the nonmoving party must produce evidence to support its claim or defense).

### IV. Plaintiffs' Breach of the Fiduciary Duty of Loyalty Claim

In Arizona, "an employee owes his or her employer a fiduciary duty, which includes a duty of loyalty." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977 ¶ 53 (Ariz. App. 2008) (citing *McAllister Co. v. Kastella*, 825 P.2d 980, 982–83 (Ariz. App. 1992) (cleaned up)). As a corollary of this duty, although an employee may generally "prepare to compete with a current employer, 'the tactics that [he] may use . . . are subject to legal limits.'" *Taser Int'l, Inc. v. Ward*, 231 P.3d 921, 928 ¶ 27 (Ariz. App. 2010) (citing Restatement (Third) of Agency § 8.04 cmt. b (Am. L. Inst. 2006)). One such limit is the agent's duty "not to use property of the principal for the agent's own purposes." *Id.* (citing Restatement (Third) of Agency § 8.05). "To recover for breach of the fiduciary duty of loyalty in Arizona, a plaintiff must prove proximately caused damages." *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1052 (D. Ariz. 2010) (citation omitted). For the breach to proximately cause an injury, the wrongful conduct must be a "substantial factor in bringing about the harm." *Id.* (quoting *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 343 (Ariz. Ct. App. 1997)).

Defendant raises issues with both (1) whether he indeed breached his duty of loyalty and (2) whether Plaintiffs have shown any evidence of damages proximately caused by the alleged breach. The Court addresses each of these issues in turn.

### A. Breach of Duty

Defendant argues that Plaintiffs have produce no evidence that Defendant "(1) competed with AUJS while employed with them; (2) that they were damaged as a result of any alleged breach; or (3) that Defendant used AUJS property for his own purposes." (Doc. 80 at 10). Regarding Restoration HQ, Defendant argues that Restoration HQ is not a competitor of AUJS and thus any actions concerning Restoration HQ cannot support a claim.[4] (Doc. 82 at 7–8). Regarding Ace, Defendant argues that his contract for services

---

[4] Because Defendant's new company, Mazzon Industries, provides consulting and sales services to other companies, (*see, e.g.*, Doc. 81-5), and Defendant's role at AUJS also involved sales, Defendant would be competing with AUJS by performing the services that Mazzon Industries offers to a competitor of AUJS. However, Defendant argues, providing such services to non-competitors should not constitute competing and thus not support a claim.

with Ace did not commence until after his employment with AUJS ended, and any conduct that occurred prior to when his employment ended was permissible preparation to compete. (*Id.* at 8–10).

Plaintiffs argue that issues of material fact exist regarding Plaintiffs' breach of the duty of loyalty claim. (Doc. 81 at 13). Namely, Plaintiffs argue first that Defendant entered into "at least two contracts for services" with Ace and Restoration HQ before his employment with AUJS ended. (*Id.*). Plaintiffs next assert that "Defendant spent months, and a considerable amount of time during normal AUJS business hours, to solicit AUJS's direct competitor, Ace." (*Id.* at 14). Plaintiff further asserts that Defendant "used his AUJS-issued computer to, at a minimum, access the business proposals that he sent to a potential client" while still working for AUJS. (*Id.*). Finally, Plaintiffs point to "proposals that Defendant sent to potential customers while still employed by AUJS that list a series of educational podcasts and events with keynote speakers sourced almost exclusively from AUJS clients." (*Id.* at 15).

First, the evidence establishes that Defendant was an employee of just AUJS, not Universal or UPS. As such, the only appropriate plaintiff in this breach of the duty of loyalty claim is AUJS. Moreover, a breach of fiduciary duty claim is only viable as to conduct that indeed competes with the employer. Thus, any activity by Defendant that was unrelated to "janitorial services" (the industry of AUJS) cannot support a claim for breach of the duty of loyalty. The Court therefore limits the following discussion to Defendant's conduct related to Ace, as neither Restoration HQ nor Global Roofing Group are in the janitorial services industry.

The Court next notes cases in which courts have examined whether summary judgment was appropriate in a breach of the duty of loyalty claim. In *Caldwell v. J & J Rocket Co.*, the court found that the plaintiff failed to set forth sufficient facts to establish a claim because the plaintiff merely stated "[the defendant] emailed or called at least four individuals at [competing entities] to 'gauge interest' in having [the defendant] perform instruction services apart from [the plaintiff]." No. CV-13-08043-PCT-PGR, 2014 WL

4954413, at *4 (D. Ariz. Sept. 30, 2014). Similarly, in *BMO Harris Bank NA v. Corley*, the court emphasized the importance of a plaintiff alleging "more details . . ., such as that [the defendants] agreed to begin copying client lists before the resignation date," noting that the line separating preparation from competition may be difficult to discern. No. CV-22-00547-PHX-DWL, 2022 WL 4781944, at *7 (D. Ariz. Oct. 3, 2022).

In *Taser Intern., Inc. v. Ward*, the court held that a "partial development of a business plan," interactions with attorneys to obtain legal advice and research existing patents, and "preliminary research and development efforts aimed at assessing the possibility of developing [a competing device]" did not constitute competing with the employer. 231 P.3d 921, 927 (Ariz. Ct. App. 2010). However, the court concluded that summary judgment was improper because the plaintiff had submitted the following evidence: (1) that defendant had "engaged in pre-termination communications with staff at [a product development company] and received its design proposal before resignation," (2) "a version of [the defendant's] business plan, completed after his resignation," and (3) a statement in the business plan that the defendant was in "Phase 3 of the design" of the competing device. *Id.* at 928.

Here, after comparing the facts Plaintiffs allege to the above caselaw, the Court finds that Plaintiffs have alleged sufficient detail regarding a breach such that "a reasonable jury could find the various alleged wrongful acts by [Defendant], taken together, constitute a breach of his fiduciary duties." *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1053 (D. Ariz. 2010). Indeed, where such detail is provided, "[w]hether an employee's actions constitute a breach of the fiduciary duty of loyalty 'is a question of fact to be decided by the trier of fact based on a consideration of all the circumstances of the case.'" *Id.* (quoting *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 989 (Ariz. Ct. App. 2008)). Therefore, as to Defendant's conduct involving Ace, summary judgment on the breach element of Plaintiffs' claim of breach of the fiduciary duty of loyalty is denied.

### B. Damages

The Court next turns to issues regarding whether Plaintiffs established damages. As

the Court sees it, the issues Defendant raises are twofold: (1) whether (and to what extent, if any) Plaintiffs should be sanctioned under Rule 37 for failure to comply with Rule 26's disclosure requirements, and (2) whether, as a matter of law, Plaintiffs' claim of breach of duty of loyalty should fail because Plaintiffs have failed to produce any evidence that Plaintiffs were damaged by an alleged breach. The Court addresses each issue in turn.

### i. Disclosure of Computation of Damages Pursuant to Rule 26(a)

The Federal Rules of Civil Procedure require generally that

> a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying . . . the documents or other evidentiary material . . . on which the computation is based.

Fed. R. Civ. P. 26(a)(1)(A)(iii). A plaintiff "should provide its computation of damages in light of the information currently available to it in sufficient detail so as to enable the defendant[] to understand the contours of their potential exposure and make informed decisions regarding settlement and discovery." *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-00369-JCM-GWF, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010).

The Rules further provide the Court the following guidance regarding a party's failure to disclose or to supplement:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1)(A)–(C). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness [or that the failure was justified]." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). The Court need not

find bad faith before imposing the evidence preclusion sanction in general. *Id.* at 1106. However, "if a Rule 37(c)(1) sanction will 'deal[] a fatal blow' to a party's claim, a district court must consider (1) 'whether the claimed noncompliance involved willfulness, fault, or bad faith' and (2) 'the availability of lesser sanctions.'" *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740–41 (9th Cir. 2021); *see also Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (noting that "even when a party clearly violates Rule 26(a)(1)(A)," the court should still consider these other factors).

Defendant correctly argues that the plain language of Rule 26 requires parties to disclose a computation of damages and evidentiary material on which the computation is based *without awaiting a discovery request*. As such, Plaintiffs' argument that Defendant needed to have "timely submitted an appropriate discovery request for evidence related to damages" for Plaintiffs to have "responded in kind" is unavailing. (*See* Doc. 81 at 16). Defendant asserts that Plaintiffs have failed entirely to provide any computation of damages or any supporting evidentiary material on which the computation is based. (Doc. 80 at 14–15; Doc. 82 at 5). Plaintiffs' response does not address the disclosure issue in particular. (Doc. 81 at 16–17).

The Court notes that, in the abstract, precluding Plaintiffs from relying on any evidence of damages at trial or in this motion would deal a fatal blow, as Plaintiffs' sole remaining claim requires proof of proximately caused damages (see below). However, in this case, Plaintiffs do not attempt to rely on any evidence of damages that was not properly disclosed. As discussed below, Plaintiffs do not allege with any specificity what damages Defendant caused, nor do Plaintiffs attempt to present any specific (previously undisclosed) evidence of such damages. (*See id.*). Because Plaintiffs do not attempt to rely on evidence that Rule 37 sanctions would preclude, the Court finds it unnecessary to rule on whether to issue sanctions under Rule 37 for Plaintiffs' failure to disclose a computation of damages.

//
//

### ii. Evidence of Damages to Sustain a Breach of Fiduciary Duty of Loyalty Claim

As discussed above, a plaintiff in a breach of fiduciary duty of loyalty claim "must prove proximately caused damages." *Firetrace*, 800 F. Supp. 2d at 1052. "For the breach to proximately cause an injury, the wrongful conduct must be a 'substantial factor in bringing about the harm.'" *Id.* (quoting *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 343 (Ariz. Ct. App. 1997)). Put differently, Plaintiffs have the burden of proving that Defendant's alleged conduct involving Ace was a substantial factor in bringing about Plaintiffs' alleged damages, whatever those alleged damages may be.

Defendant asserts that Plaintiffs have failed to disclose "any evidentiary material to support damages in the year since they filed their complaint," pointing out that Plaintiffs' Rule 26 disclosure lists just "categories of damages."[5] (Doc. 80 at 15). In response, Plaintiffs argue that "there is substantial evidence that Defendant harmed Plaintiffs and breached his duty of loyalty" and proceed to restate the relevant facts discussed above.

The Court finds that Plaintiffs have failed to allege facts or provide any evidence sufficient to establish a genuine issue of material fact as to causation and damages. Whether or not Defendant took the actions discussed in the "breach" section above is a separate inquiry from that of whether the alleged actions actually caused any injury to Plaintiffs. Plaintiffs may not simply restate their allegations as to breach and vaguely conclude that "this matter [of damages] should be left to a jury." Plaintiffs have the burden of establishing a prima facie case; as such, they have the burden of showing some evidence of causation and damages from which a jury could possibly conclude Defendant indeed caused any alleged damages to Plaintiffs. Because Plaintiffs have failed to do this, the Court finds that Plaintiffs' breach of fiduciary duty of loyalty claim fails as a matter of law.

---

[5] The categories of damages listed are as follows: "all salaries, bonuses, allowances, and other remuneration paid to defendant during any time period Defendant was in breach of his duty of loyalty," "Costs and attorneys' fees incurred by Plaintiffs," "[r]ecission of any moneys received by Defendant that were a result o his breach of his duty . . . or his misuse of Plaintiffs' confidential information," "profits lost by Defendant's diversion of work away from Plaintiffs as a result of Defendant's breach of his duty of loyalty," and "award of pre-judgment and post-judgment interest at the legal rate under applicable law." (Doc. 80-5 at 5–6).

**V.     CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 80), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiffs; Plaintiffs shall take nothing.

Dated this 7th day of June, 2024.

James A. Teilborg
Senior United States District Judge